

FILED
10/5/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 513 |
| v. | |
| KATARZYNA PODGORSKA | Judge Sara L. Ellis |

### PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant KATARZYNA PODGORSKA, and her attorney, DONALD ANGELINI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, a quantity of marihuana, in violation of Title 21, United States Code, Section 841(a)(1) and 846 (Count 1) and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 1956(h) (Count 3, 8-10).

3. Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crime with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count 1, which charges defendant with conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely a quantity of a substance containing a detectable amount of marihuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in Count 1 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct:

Beginning no later than in or around 2017 and continuing until on or about July 2018 in the Northern District of Illinois, Eastern Division, and elsewhere, defendant KATARZYNA PODGORSKA did conspire with Noah Grimes, Individual A, and others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of marihuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

Specifically, between approximately 2017 and July 2018, PODGORSKA assisted Grimes in packaging narcotics for distribution and in performing financial transactions concealing the unlawful source of the proceeds of Grimes's narcotics proceeds. In 2017 and 2018, PODGORSKA conducted approximately $563,000 in bank transactions involving cash narcotics proceeds at Grimes's direction. On some occasions, PODGORSKA exchanged smaller bills for larger bills, in order to make them easier to transport, store and conceal. On other occasions, PODGORSKA deposited cash into bank accounts at Grimes's direction, in amounts under $10,000, for the purpose of evading bank currency transaction reporting requirements. PODGORSKA also opened a credit card account in her own name, at Grimes's direction, for the purpose of concealing the nature and origin of the funds used to pay the credit card. For example, on January 9, 2017, PODGORSKA exchanged $9,100 in cash and made a $200 cash payment to a credit card in her name at the Chase Bank located at 1122 N. Clark Street in Chicago. That same day, PODGORSKA exchanged $8,900 and made another $200 cash payment to her credit card at the Chase Bank located at 609 W. North Avenue in Chicago. PODGORSKA conducted structured cash exchanges and then made cash payments to her credit cards at multiple Chase locations on the same day on January 20, February 6, February 13, March 10, April 7, April 18, April 25, April 27 and May 11, 2017.

PODGORSKA also used cash narcotics proceeds to pay rent on an apartment where she and Grimes resided together ("Grimes-Podgorska Residence"). For

3

example, on September 29, 2017, PODGORSKA purchased a cashier's check in the amount of $6,300 and used it to make a rent payment for the Grimes-Podgorska Residence. PODGORSKA also paid for expenses that GRIMES incurred in his narcotics trafficking activities, for the purpose of concealing the nature and source of the funds transacted. For example, on January 12, 2017, PODGORSKA paid $3,500 of charges related to narcotics trafficking activities on a credit card in Grimes's name from funds in a personal checking account in her own name. For example, on October 14, 2017, PODGORSKA charged $4,633 of transportation expenses related to Grimes's narcotics trafficking activities to a credit card in her own name.

PODGORSKA acknowledges that, in total, between 2017 and July 2018, the amount of marihuana which was distributed by Grimes, reasonably foreseeable to her, and which she helped to conceal, was at least 100 kilograms of marijuana.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least three years, and up to any number of years, including life.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

5

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

    b.    **Offense Level Calculations**.

        i.    The base offense level is 24, pursuant to Guideline § 2D1.1(c)(8), because the amount of marijuana involved in the offense of conviction for which she is accountable is at least 100 kilograms of marihuana.

        ii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 21 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose.

      e.    Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## **SOAR COURT PROGRAM**

16. Defendant agrees to participate in the Sentencing Options That Achieve Results (SOAR) program, pursuant to the terms set forth in the SOAR Contract for Participation attached as Exhibit A.

17. At or before the time of sentencing or the successful conclusion of the defendant's participation in the SOAR Program, defendant agrees, as detailed above: (a) to pay any applicable restitution in full; or (b) in the case of a federal victim, to the entry of a consent judgment for the restitution amount; or (c) in the case of a non-federal victim, to execute a promissory note in the restitution amount. If the participant receives a sentence of probation or imprisonment, any applicable restitution will be included in the judgment, and the entry of a consent judgment or execution of a promissory note will not be required.

18. Defendant acknowledges that her ongoing participation, successful completion, or involuntary termination from the SOAR program rests in the sole

9

discretion of the SOAR program judge. All decisions made by the SOAR program judge, including those involving defendant's continued participation in the program, imposition of a sanction for non-compliance, or involuntary termination from the program, are not appealable.

19. If the SOAR program judge determines that defendant has successfully completed the SOAR program, defendant will receive a sentence that does not include a term of imprisonment. Defendant may also be eligible, with the approval of the government: (1) to withdraw her guilty plea and enter a plea to a misdemeanor offense; or (2) to have all pending charges dismissed. Defendant acknowledges that the decision to decrease the charges to a misdemeanor or to dismiss the charges rests solely with the government, and is not appealable.

20. If the SOAR program judge terminates defendant from the SOAR program, defendant will proceed to sentencing. Both parties will be free to recommend any sentence, and the Court will impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines. Defendant may not withdraw her guilty plea because she has been terminated from the SOAR program, or because the government does not agree to reduce the charge to a misdemeanor or dismiss the charge.

21. Defendant understands that her failure to comply with SOAR program requirements may result in sanctions, including a period of imprisonment. Defendant is aware that under 18 U.S.C. §§ 3142 and 3143, a court may be required to make a

finding as to a defendant's dangerousness or risk of flight before ordering that defendant to be detained. Defendant knowingly waives the right to any such judicial finding in connection with a sanction of imprisonment assessed during the SOAR program.

## **Acknowledgments and Waivers Regarding Plea of Guilty**

### **Nature of Agreement**

22.  This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 513.

23.  This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### **Waiver of Rights**

24.  Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

12

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

      b.    **Waiver of appellate and collateral rights**. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was

13

determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

25. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

26. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

14

27. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28. For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

29. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

30. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31. Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on

the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____

JOHN R. LAUSCH, JR.  
United States Attorney

CHARLES W. MULANEY  
Assistant U.S. Attorney  
Digitally signed by CHARLES MULANEY  
Date: 2022.09.21 10:20:14 -05'00'

KATARZYNA PODGORSKA  
Defendant

DONALD ANGELINI  
Attorney for Defendant